UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

NASHONIE CHANG,

                         Plaintiff,

    -v-

PFIZER, INC.,

                         Defendant.

No. 15-CV-8994 (KMK)

OPINION & ORDER

---

Appearances:

Christopher J. Carcich, Esq.
Michael Malatino, Esq.
Deutsch Atkins, P.C.
Hackensack, NJ
*Counsel for Plaintiff*

Jennifer B. Courtian, Esq.
Mina M. Wood, Esq.
Kevin G. Lauri, Esq.
Jackson Lewis P.C.
New York, NY
*Counsel for Defendant*

KENNETH M. KARAS, District Judge:

    Plaintiff Nashonie Chang ("Plaintiff") brings this Action against Pfizer Inc ("Defendant"), asserting claims for breach of contract, breach of the duty of good faith and fair dealing, willful misconduct, and equitable relief arising from Defendant's determination that Plaintiff did not qualify for short-term disability benefits. (*See generally* Am. Notice of Removal Ex. A ("Complaint") (Dkt. No. 8).)[1]  Defendant removed the case from state court on the ground

---

[1] Defendant notes that the caption of the Complaint is incorrect. Defendant's name is "Pfizer Inc" not "Pfizer, Inc."

that portions of Plaintiff's claims are completely preempted by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 et seq.  Defendant has filed a Partial Motion To Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), seeking to dismiss the portion of Plaintiff's claims that are preempted by ERISA.  (Dkt. No. 25.)  Plaintiff has filed a Motion To Remand the case back to state court and for attorney's fees incurred as a result of the allegedly improper removal.  (Dkt. No. 28.)  For the following reasons, Plaintiff's Motion To Remand is denied, Plaintiff's request for attorney's fees is denied as moot, and Defendant's Partial Motion to Dismiss is granted.

## I.  Background

### A.  Factual Background

The following facts are drawn from Plaintiff's Complaint and the documents appended thereto, and are taken as true for the purpose of resolving the Motions.

Plaintiff began working for Defendant in February 2002 as a packaging employee in Defendant's Brooklyn, New York plant.  (Compl. ¶ 3.)  "Not long after" Plaintiff began working for Defendant, she experienced "a severe sinus infection."  (*Id.* ¶ 4.)  Plaintiff continued to work at Defendant's Brooklyn plant in various capacities until she was terminated in 2009.  (*Id.* ¶¶ 5–8.)  Plaintiff was rehired by Defendant in April 2011 as a "Managing – Engineer."  (*Id.* ¶¶ 10–11.)  During her employment with Defendant, Plaintiff was a participant in various employee benefits plans, including short-term disability ("STD") and long-term disability ("LTD") plans.  (*Id.* ¶ 12.)

Plaintiff continued to suffer from issues related to her sinuses after being rehired.  (*See id.* ¶ 15.)  On March 4, 2014, Plaintiff went to work "despite having breathing difficulties."  (*Id.* ¶ 16.)  She was subsequently discovered in a hallway struggling to breathe and was "rushed to

medical and eventually sent home." (*Id.*)  Plaintiff was thereafter seen by "many" medical professionals, (*id.* ¶ 18), who eventually diagnosed her with "hypersensitive airway disease grouped with Bronchitis and Asthma," (*id.* ¶ 20).  After missing four days of work, Plaintiff applied for and was granted STD benefits, which are payable for up to six months if an employee is "seriously ill."  (*Id.* ¶¶ 19, 21, 52 (internal quotation marks omitted).)

Despite ongoing efforts to treat Plaintiff's condition, Defendant terminated Plaintiff's STD benefits on May 12, 2014, (*id.* ¶ 28), because Plaintiff did not provide sufficient evidence to establish she was receiving "active and effective treatment," (*id.* ¶ 29 (internal quotation marks omitted); *see also id.* Ex. D).  Plaintiff appealed this determination, explaining that she was being treated by eight different healthcare providers.  (*Id.* ¶ 30; *see also id.* Ex. E.)  Defendant denied the appeal on the ground that Plaintiff provided "insufficient medical documentation of ongoing medical treatment."  (*Id.* ¶ 32 (internal quotation marks omitted); *see also id.* Ex. F.)  Plaintiff alleges that the STD plan requires neither "active and effective treatment" nor "ongoing medical treatment."  (*Id.* ¶ 33 (internal quotation marks omitted).)

After being informed that her appeal had been denied, Plaintiff immediately contacted Dr. Nicole Schaffer ("Dr. Schaffer"), the doctor who approved the denial of Plaintiff's STD benefits.  (*Id.* ¶ 34.)  Plaintiff "pleaded" with Dr. Schaffer to reinstate Plaintiff's STD benefits, but Dr. Schaffer accused Plaintiff of "being off someplace" and explained that Defendant revoked Plaintiff's STD benefits because Plaintiff "was not getting better anytime soon."  (*Id.* ¶ 35 (internal quotation marks omitted).)  Plaintiff then asked whether she should apply for LTD benefits.  (*Id.* ¶ 36.)  Dr. Schaffer allegedly responded that Plaintiff was never going to get LTD benefits because Plaintiff needed to receive STD benefits for six months to qualify.  (*Id.*)  The LTD plan summary itself reflects that a disabled employee "may be eligible to begin receiving

3

LTD benefits after 180 consecutive days of disability." (Decl. of Jennifer B. Courtian ("Courtian Decl.") Ex. 3, at 7 ("LTD Plan Summary") (Dkt. No. 27).)[2]

Plaintiff then asked Defendant for clearance to return to work, or in the alternative, the ability to work from home. (Compl. ¶ 37.) Both requests were denied, and Plaintiff was terminated on July 11, 2014. (*Id.* ¶¶ 37–38.) Since that time, Plaintiff has lost her health insurance and been rendered homeless. (*Id.* ¶¶ 40, 49.) She has been unable to have the surgery necessary to treat her sinus condition. (*Id.* ¶ 47.)

Plaintiff alleges that Defendant breached its contractual obligation to provide Plaintiff STD benefits. (*Id.* ¶ 48.) She contends that she was "seriously ill" within the meaning of the STD plan during the relevant period of time and that Defendant imposed the "active and effective treatment" and "ongoing medical treatment" requirements as a pretext to deny her benefits. (*Id.* ¶¶ 53–54 (internal quotation marks omitted).) By impermissibly denying benefits, Defendant prevented Plaintiff from obtaining LTD benefits. (*Id.* ¶ 57.) Plaintiff seeks compensatory and punitive damages and an injunction requiring Defendant to retroactively reinstate her benefits to the date of her termination, "including application for long-term disability." (*Id.* ¶ 71.)

B.  Procedural Background

Plaintiff initiated this Action on October 23, 2015, by filing the Complaint in state court. She asserted four causes of action: (1) breach of contract; (2) breach of the duty of good faith and

---

[2] There appears to be agreement between the Parties that an employee cannot obtain LTD benefits without first receiving STD benefits for 180 consecutive days. (*See* Pl.'s Mem. of Law in Opp'n to Def.'s Mot. To Dismiss 8 (Dkt. No. 36).) The Parties have not provided the LTD plan itself, but the LTD plan summary states: "To receive benefits from the Plan, you must become disabled, as described in the previous section, while a participant in the Plan. If you are disabled, you may be eligible to begin receiving LTD benefits after 180 consecutive days of disability (this is called the 'benefit waiting period')." (LTD Plan Summary 7.)

fair dealing; (3) willful misconduct; and (4) equitable relief.  On November 16, 2015, Defendant removed the Action to federal court.  (*See* Notice of Removal (Dkt. No. 1).)  Pursuant to a Scheduling Order, Defendant filed its Partial Motion To Dismiss and accompanying papers on March 25, 2016.  (Dkt. Nos. 25–27.)  Plaintiff filed her Motion To Remand and accompanying papers on March 29, 2016.  (Dkt. Nos. 28–29.)  Plaintiff filed her opposition to Defendant's Partial Motion To Dismiss on April 27, 2016, (Dkt. No. 36), and Defendant filed opposition papers to Plaintiff's Motion To Remand on the same date, (Dkt. No. 39).

## II.  Discussion

### A.  Motion To Remand

Plaintiff argues that her state-law causes of action are not preempted by ERISA, and therefore, the Court lacks federal subject matter jurisdiction to adjudicate her claims.  She contends that Defendant's liability arises out of its interpretation of the STD plan, which is not governed by ERISA.  (Pl.'s Mem. of Law in Supp. of Mot. To Remand ("Pl.'s Remand Mem.") 2 (Dkt. No. 29).)  She admits, however, that the LTD plan "provides a benchmark for damages." (*Id*. at 8.)  Defendant argues that Plaintiff's state-law claims are completely preempted by ERISA "to the extent they arise out of [Plaintiff's] inability to obtain LTD benefits or seek damages calculated pursuant to [Defendant]'s LTD [p]lan."  (Def.'s Mem. of Law in Opp'n to Pl.'s Mot. To Remand ("Def.'s Remand Opp'n") 1 (Dkt. No. 39).)  Therefore, the Court must determine whether Plaintiff's claims, to the extent they relate to and seek damages under the LTD plan, are completely preempted by ERISA and were properly removed to federal court.

#### 1.  Removal

"A party seeking removal bears the burden of showing that federal jurisdiction is proper." *Montefiore Med. Ctr. v. Teamsters Local 272*, 642 F.3d 321, 327 (2d Cir. 2011).  "A civil claim

filed in state court can only be removed to federal court if the district court would have had original jurisdiction to hear the claim." *Id.* (citing 28 U.S.C. § 1441(a)).  "District courts have original jurisdiction over 'federal question' cases, or cases 'arising under the Constitution, laws, or treaties of the United States.'" *Arditi v. Lighthouse Int'l*, 676 F.3d 294, 298 (2d Cir. 2012) (quoting 28 U.S.C. § 1331).  "Ordinarily, determining whether a particular case arises under federal law turns on the 'well-pleaded complaint' rule." *Aetna Health Inc. v. Davila*, 542 U.S. 200, 207 (2004) (some internal quotation marks omitted).  "Under the 'well-pleaded complaint rule,' federal subject matter jurisdiction typically exists only 'when the plaintiff's well-pleaded complaint raises issues of federal law,' and not simply when federal preemption might be invoked as a defense to liability." *Montefiore*, 642 F.3d at 327 (quoting *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 63 (1987)); *see also Davila* 542 U.S. at 207 ("[T]he existence of a federal defense normally does not create statutory arising under jurisdiction, and a defendant may not generally remove a case to federal court unless the *plaintiff's* complaint establishes that the case arises under federal law." (alteration, citation, and internal quotation marks omitted)).  "There is an exception, however, to the well-pleaded complaint rule.  When a federal statute wholly displaces the state-law cause of action through complete pre-emption, the state claim can be removed." *Davila*, 542 U.S. at 207 (alteration and internal quotation marks omitted).  This exception exists because "[w]hen the federal statute completely pre-empts the state-law cause of action, a claim which comes within the scope of that cause of action, even if pleaded in terms of state law, is in reality based on federal law." *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 8 (2003).

6

### 2.  General ERISA Preemption Principles

"Congress enacted ERISA to 'protect . . . the interests of participants in employee benefit plans and their beneficiaries' by setting out substantive regulatory requirements for employee benefit plans and to 'provid[e] for appropriate remedies, sanctions, and ready access to the Federal courts.'"  *Davila*, 542 U.S. at 208 (quoting 29 U.S.C. § 1001(b)).  "Section 502(a)(1)(B) of ERISA provides participants or beneficiaries with a civil remedy to recover benefits due under their plans, to enforce rights under their plans, or to clarify rights to future benefits under their plans."  *Arditi*, 676 F.3d at 299 (citing 29 U.S.C. § 1132(a)).

"To establish a 'uniform regulatory regime over employee benefit plans,' and 'to ensure that employee benefit plan regulation is exclusively a federal concern,' ERISA includes expansive pre-emption provisions."  *Id.* (quoting *Davila*, 542 U.S. at 208).  ERISA provides that it "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan."  ERISA § 514(a), 29 U.S.C. § 1144(a).

In *Davila*, the Supreme Court established a two-part test to determine whether a cause of action is preempted by ERISA.  A claim is completely preempted where: (1) "an individual, at some point in time, could have brought [her] claim under ERISA § 502(a)(1)(B)," and (2) "no other independent legal duty . . . is implicated by a defendant's actions."  542 U.S. at 210.  The Second Circuit has clarified that under the first prong of *Davila*, courts should consider: (1) "whether the plaintiff is the *type* of party that can bring a claim pursuant to § 502(a)(1)(B)," and (2) "whether the *actual claim* that the plaintiff asserts can be construed as a colorable claim for benefits pursuant to § 502(a)(1)(B)."  *Montefiore*, 642 F.3d at 328.  The *Davila* test "is conjunctive; a state-law cause of action is preempted only if both prongs of the test are satisfied."  *Id.*

7

The analysis of whether a claim is preempted by ERISA starts with the "presumption that Congress does not intend to supplant state law." *Stevenson v. Bank of N.Y., Co.*, 609 F.3d 56, 59 (2d Cir. 2010) (internal quotation marks omitted). "Courts are reluctant to find that Congress intended to preempt state laws that do not affect the relationships among" "the core ERISA entities: beneficiaries, participants, administrators, employers, trustees and other fiduciaries, and the plan itself." *Gerosa v. Savasta & Co.*, 329 F.3d 317, 324 (2d Cir. 2003). On the other hand, "state laws that would tend to control or supersede central ERISA functions—such as state laws affecting the determination of eligibility for benefits, amounts of benefits, or means of securing unpaid benefits—have typically been found to be preempted." *Id.*

### 3. Analysis

Plaintiff asserts four, state-law causes of action—(1) breach of contract; (2) breach of the duty of good faith and fair dealing; (3) willful misconduct; and (4) equitable relief—stemming from Defendant's decision to terminate Plaintiff's STD benefits.[3] It is undisputed that the STD plan *is not* governed by ERISA. As Plaintiff explains, the STD plan is a "Payroll practice[]," not an "'employee welfare benefit plan.'" 29 C.F.R. § 2510.3-1(b)(2) (explaining that the "[p]ayment of an employee's normal compensation, out of the employer's general assets, on account of periods of time during which the employee is physically or mentally unable to perform his or her duties, or is otherwise absent for medical reasons (such as pregnancy, a physical examination[,] or psychiatric treatment)," is not governed by ERISA). It is also undisputed, however, that the LTD plan *is* governed by ERISA. The Court's task is thus to determine whether Plaintiff's request for damages calculated pursuant to the LTD plan and her

---

[3] Plaintiff has consented to the dismissal of the equitable relief claim. (Pl.'s Mem. of Law in Opp'n to Def.'s Mot. To Dismiss 18.)

request for the ability to apply for LTD benefits satisfies the *Davila* test for complete preemption.

### a. *Davila* Prong One

The Court first considers whether Plaintiff could have brought some portion of her claims under ERISA § 502(a)(1)(B). *See Davila*, 542 U.S. at 210. In making this determination, the Court must first consider whether Plaintiff is "the *type* of party that can bring a claim" under § 502(a)(1)(B), and then "whether the *actual claim*[*s*]" asserted in this Action constitute "colorable claim[s]" for benefits under § 502(a)(1)(B). *Montefiore*, 642 F.3d at 328.

#### i. Type of Party

As noted above, ERISA § 502(a)(1)(B) provides that a civil action may be brought "by a participant or beneficiary . . . to recover benefits due to [her] under the terms of [her] plan, to enforce [her] rights under the terms of the plan, or to clarify [her] rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). Plaintiff alleges that she was a participant in Defendant's LTD plan, (Compl. ¶ 12), and is therefore "the type of party who can bring an ERISA claim." *Arditi*, 676 F.3d at 299 (finding that the plaintiff was the type of party who could bring an ERISA claim because he was "a [p]lan participant and he [was] seeking benefits under the [p]lan").

#### ii. Colorable Claim

The Parties disagree on whether any part of Plaintiff's claims "can be construed as . . . colorable claim[s] for benefits pursuant to § 502(a)(1)(B)." *Id.* (internal quotation marks omitted). Plaintiff argues that she could not bring her claims under ERISA because she "never qualified for [LTD] benefits" due to the fact that she did not receive STD benefits for 180 consecutive days. (Pl.'s Mem. of Law in Opp'n to Def.'s Mot. To Dismiss 8 (Dkt. No. 36).)

Defendant does not dispute that Plaintiff could not qualify for LTD benefits, but nonetheless argues that Plaintiff's claims "'implicate coverage determinations under the relevant terms of [an ERISA] [p]lan,'" and are therefore colorable claims for benefits pursuant to ERISA. (Def.'s Mem. of Law in Supp. of Mot. To Dismiss 7 (Dkt. No. 26) (quoting *Montefiore*, 642 F.3d at 331).)

"[T]o be colorable under § 502(a)(1)(B) . . . the actual claims asserted must be claims for benefits." *Neuroaxis Neurosurgical Assocs., PC v. Cigna Healthcare of N.Y., Inc.*, No. 11-CV-8517, 2012 WL 4840807, at *3 (S.D.N.Y. Oct. 4, 2012). Plaintiff's claims can be construed as colorable claims for benefits because Plaintiff is seeking damages calculated pursuant to the terms of the LTD plan. Essentially, Plaintiff is seeking a determination that but for the Defendant's decision to terminate her STD benefits, she would have otherwise qualified for LTD benefits. Plaintiff resists this conclusion by arguing that her state-law claims are not colorable claims for ERISA benefits because she did not meet a necessary prerequisite to qualify for LTD benefits—i.e., receiving STD benefits for 180 consecutive days—but this argument is too broad. The question presented is not whether Plaintiff would ultimately have been successful if she applied for LTD benefits. *See McCulloch Orthopedic Surgical Servs., PLLC v. United Healthcare Ins. Co. of N.Y.*, No. 14-CV-6989, 2015 WL 3604249, at *5 (S.D.N.Y. June 8, 2015) ("[T]he mere fact that [the plaintiff]'s claims might not succeed under ERISA does not mean that they are not preempted by ERISA. The claim need only be colorable." (internal quotation marks omitted)); *Olchovy v. Michelin N. Am., Inc.*, No. 11-CV-1733, 2011 WL 4916891, at *4 (E.D.N.Y. Sept. 30, 2011) ("[A] dispute is a colorable claim for benefits under ERISA when its resolution depends on an interpretation of the terms of an ERISA-governed employee benefit plan."), *adopted by* 2011 WL 4916564 (E.D.N.Y. Oct. 17, 2011). Plaintiff's claims are colorable

under the LTD plan because a determination as to the amount of her damages under the plan "depends on an interpretation of the terms of an ERISA-governed employee benefit plan." *Olchovy*, 2011 WL 4916891, at *4. While Plaintiff purports to request the value of the LTD benefits merely as a "benchmark" for damages, to determine the amount of damages, if any, a court would be required to interpret and apply the terms of the LTD plan. Plaintiff's claims, to the extent she seeks damages calculated based upon Defendant's failure to provide LTD benefits, are thus colorable claims for ERISA benefits.

It cannot be the case that a plaintiff can avoid ERISA preemption simply by declining to apply for ERISA benefits, but then file suit requesting damages calculated pursuant to the terms of an ERISA plan. Indeed, the Second Circuit has held that a plaintiff's claims were preempted even though the plaintiff did not qualify for benefits under the defendant's ERISA plan. *See Arditi*, 676 F.3d at 299 (finding the first prong of *Davila* satisfied because the plaintiff sought to enforce specific provisions of an ERISA plan and his claims implicated coverage established by the terms of that plan). As in *Arditi*, Plaintiff's claims "implicate coverage and benefits established by the terms of the ERISA benefit plan." *Id.* (internal quotation marks omitted). Accordingly, the first prong of *Davila* is satisfied.

### b.  *Davila* Prong Two

"Under *Davila*, a claim is completely preempted only if there is no other independent legal duty that is implicated by the defendant's actions." *Montefiore*, 642 F.3d at 332 (alteration and internal quotation marks omitted). Plaintiff argues that Defendant's breach of the STD plan represents the independent legal duty upon which this Action is based. (Pl.'s Remand Mem. 6.) Plaintiff relies heavily on the Second Circuit's decision in *Stevenson* in making this argument. (*Id.* at 7–8.)

In *Stevenson*, the plaintiff was employed by defendant Bank of New York Company ("BNY"), but decided to accept a temporary position with an affiliated company. Before accepting the position, the plaintiff asked the defendants about the status of his pension benefits during his time with the affiliated business. 609 F.3d at 60. The defendants agreed to "maintain those benefits," even though the plaintiff otherwise would have lost his benefits because he was accepting a position with another employer. *Id.* (alteration and internal quotation marks omitted). Based on these promises, the plaintiff accepted the other position. *Id.* The plaintiff later filed suit in state court asserting, among other causes of action, a breach of contract claim because the defendants allegedly failed to honor these promises. *Id.* at 58. The defendants removed the case to federal court, claiming that the plaintiff's state-law claims were preempted by ERISA. *Id.* The Second Circuit held that removal was improper. It explained:

> The complaint's allegations and the writings identified by [the plaintiff], whatever their contractual significance, do not support a finding of ERISA preemption. First, the defendants' asserted liability under the original complaint does not "derive[]" from "the particular rights and obligations established by [any] benefit plan[]," *Aetna Health Inc. v. Davila*, 542 U.S. 200, 213 (2004), but rather from a separate promise that references various benefit plans, none of which directly applies to [the plaintiff] by its terms, as a means of establishing the value of that promise. Because [the plaintiff]'s state law claims derive from this promise rather than from an ERISA benefits plan, their resolution does not require a court to review the propriety of an administrator's or employer's determination of benefits under such a plan. The BNY benefits plans may provide a benchmark for determining claimed damages, but such damages would be payable from BNY's own assets, not from the plans themselves. Further, [the plaintiff]'s state law claims do not allege that any plan administrator or employer breached a fiduciary duty or plan provision relating to the BNY plans. Thus, those claims do not affect the relationships among the "core ERISA entities" with respect to those entities' roles under ERISA.

*Stevenson*, 609 F.3d at 60–61 (citation omitted). In other words, it was the defendants' promises to maintain the plaintiff's benefits that rendered ERISA preemption inapplicable. *See Arditi*, 676 F.3d at 300 ("In *Stevenson*, an agreement separate and independent from the pension plan

12

governed the plaintiff's benefits because the plaintiff was no longer in the bank's employ and was no longer a participant in the bank's plan.").

Plaintiff's reliance on *Stevenson*, however, is misplaced because there are key differences between *Stevenson* and this Action. In *Stevenson*, the defendants promised to maintain the plaintiff's pension benefits. Here, Defendant has made no similar promises; it is under no independent obligation to provide LTD benefits to Plaintiff unless she otherwise qualifies under the terms of the plan documents. *Cf. Arditi*, 676 F.3d at 301 (holding that the plaintiff's claims were preempted by ERISA because the defendant "made no promises of benefits separate and independent from the benefits under the [p]lan"). Moreover, unlike in *Stevenson*, Plaintiff was a member of the LTD plan at the time Defendant allegedly breached the STD plan. In *Stevenson*, the plaintiff had no recourse under the benefits plans because he was no longer a participant in those plans. Plaintiff is not seeking benefits under plans that do not "directly appl[y]" to her, *Stevenson*, 609 F.3d at 61; she is seeking damages pursuant to the ERISA plan in which she was a participant.

Plaintiff notes also that courts in other circuits have held that state-law claims are not preempted where adjudication of the claims requires only a "cursory examination" of plan documents, *Trs. of AFTRA Health Fund v. Biondi*, 303 F.3d 765, 780 (7th Cir. 2002), or the references to plan benefits serve "only [as] a way to articulate specific, ascertainable damages," *Marks v. Newcourt Credit Grp., Inc.*, 342 F.3d 444, 453 (6th Cir. 2003) (internal quotation marks omitted). Particularly relevant here is *LeBlanc v. SunTrust Bank*, No. 15-CV-630, 2015 WL 5038032 (M.D. Tenn. Aug. 25, 2015), where, under circumstances similar to those presented in this Action, the court held that state-law claims relating to a short-term disability plan were not preempted because the short-term plan was not governed by ERISA. In *LeBlanc*, the defendants

argued that the plaintiff's claims were preempted because in reality the plaintiff sought benefits under a long-term disability plan, which was governed by ERISA. *Id.* at *2. Citing *Marks*, the court concluded that the asserted claims related only to the short-term plan. *Id.* at *3–4.

The Court respectfully disagrees with the *LeBlanc* court's analysis and finds the courts' statements in *Biondi* and *Marks* inapplicable to the facts of this case. Plaintiff's reference to the LTD plan, does not serve merely as a benchmark for determining the value of her damages. As in *Arditi*, the ERISA plan "[is] the basis for the claimed benefits." 676 F.3d at 300. Defendant's alleged breach of the STD plan tells the Court little about Defendant's obligation to pay Plaintiff LTD benefits. Indeed, the STD plan explains that the "LTD [plan] is administered independently from [the] STD [plan], and is subject to different requirements." (Courtian Decl. Ex. 2, at 13.) If, as Plaintiff alleges, Defendant did breach the STD plan, she would be entitled to damages for that breach. She contends those damages include the value of the LTD benefits she lost. But Defendant's breach of the STD plan does not necessarily mean that Plaintiff would have otherwise qualified to receive LTD benefits. Both Parties acknowledge that the LTD plan is governed by a separate set of requirements, one of which is being "disabled" for 180 consecutive days. (LTD Plan Summary 7.) A court would independently have to read, analyze, and apply the terms of the LTD plan to determine whether Plaintiff was "disabled"—a determination ordinarily left to the plan's Claims Administrator, (*id.* at 6)—before it could determine if Plaintiff can receive damages calculated under the plan. This analysis would "affect the relationships among" "the core ERISA entities," *Gerosa*, 329 F.3d at 324, because "[Defendant]'s obligations under the [LTD] [p]lan are inextricably intertwined with the interpretation of [p]lan coverage and benefits," *Arditi*, 676 F.3d at 299 (internal quotation marks omitted). Congress's goal of creating a "uniform regulatory regime over employee benefit

plans" would be frustrated if this analysis were not conducted in federal court. *Id.* (internal quotation marks omitted).

Finally, while not directly applicable here, the Second Circuit also has drawn a distinction between claims involving the "right to payment" and claims involving the "amount of payment." *See Montefiore*, 642 F.3d at 331. "The former are said to constitute claims for benefits that can be brought pursuant to § 502(a)(1)(B), while the latter are typically construed as independent contractual obligations . . . ." *Id.* Plaintiff's claims are akin to claims involving the right to payment because Plaintiff must first establish her entitlement to LTD benefits before a court can calculate damages under the LTD plan.

As there is no independent legal duty for Defendant to provide LTD benefits to Plaintiff, Plaintiff's claims are completely preempted to the extent she seeks damages calculated in accordance with the terms of the LTD plan.[4] Accordingly, Plaintiff Motion To Remand is denied; Defendant had a valid basis upon which to remove this Action.[5]

B. Motion To Dismiss

Defendant seeks to dismiss Plaintiff's claims to the extent that they are completely preempted. Defendant's Partial Motion To Dismiss is granted because even if the preempted portions of Plaintiff's claims were re-styled as § 502(a)(1)(B) claims, they would fail.

"The Second Circuit has held that a claim for benefits pursuant to ERISA § 502(a)(1)(B) may only be asserted against the plan itself, the plan administrator, and the plan trustees." *Star*

---

[4] Because the Court has determined that portions of Plaintiff's state-law claims are completely preempted, the Court declines to address Defendant's argument that the claims are also expressly preempted.

[5] Plaintiff's request for attorney's fees resulting from the allegedly improper removal is denied as moot.

*Multi Care Servs., Inc. v. Empire Blue Cross Blue Shield*, 6 F. Supp. 3d 275, 292 (E.D.N.Y. 2014); *see also Crocco v. Xerox Corp.*, 137 F.3d 105, 107 (2d Cir. 1998) ("[O]nly the plan and the administrators and trustees of the plan in their capacity as such may be held liable." (internal quotation marks omitted)). Defendant is not the plan, the plan administrator, or a plan trustee. Accordingly, Plaintiff's claims—to the extent they are construed to be asserted under ERISA § 502(a)(1)(B)—are dismissed.

### III. Conclusion

For the foregoing reasons, Plaintiff's Motion To Remand is denied, Plaintiff's request for attorney's fees is denied as moot, and Defendant's Partial Motion To Dismiss is granted. Plaintiff's claims, to the extent they seek benefits and/or damages pursuant to the LTD plan, are dismissed. Plaintiff may file an Amended Complaint, addressing the deficiencies identified herein, within 30 days from the date of this Opinion. If Plaintiff declines to file an Amended Complaint, Defendant shall file an Answer to the Complaint within 60 days from the date of this Opinion. The Clerk of Court is respectfully directed to terminate the pending Motions. (Dkt. Nos. 25, 28.)

SO ORDERED.

DATED:   March 9, 2017
         White Plains, New York

KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE

16